IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action No. 10-21-GMS |
| | ) | |
| TODD YURGIN | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM

**I.  INTRODUCTION**

On February 22, 2010, the Grand Jury for the District of Delaware indicted co-defendants Todd Yurgin ("Yurgin") and Joseph H. Aughenbaugh ("Aughenbaugh")[1] on nine counts related to a complex fraud and identity theft scheme. (D.I. 22.) After Yurgin indicated through prior counsel that he wished to enter a guilty plea, the court scheduled a Rule 11 change of plea hearing for July 27, 2010. On the day of the hearing, however, Yurgin indicated that he had changed his mind and wished to proceed to trial. Yurgin stated that he would not waive his rights under the Speedy Trial Act, and the court consequently scheduled a 5-day jury trial to commence on September 20, 2010. On August 12, 2010, the federal grand jury issued a sixteen-count superseding indictment against Yurgin that included several additional counts relating to the fraud scheme as well as one count – Count Sixteen - charging him with assaulting a federal officer in violation of 18 U.S.C. § 111. (D.I. 44.) Further plea discussions followed, and Yurgin again informed the government and the court of his intention to plead guilty. A new memorandum of plea agreement was then prepared referring to the terms of the superseding

---

[1] Aughenbaugh's full legal name is Lord Joseph Helaman Mormon Aughenbaugh.

indictment. The court then scheduled a second Rule 11 change of plea hearing for August 30, 2010. Yurgin ultimately pled guilty to a Felony Information that was prepared on the day of that hearing. Presently before the court is Yurgin's motion to withdraw that guilty plea. For the reasons stated below, the court will deny that motion.

## II.   FACTS AND PROCEDURAL HISTORY

At the August 30 hearing, Yurgin expressed reservations about pleading guilty to the superseding indictment. Yurgin's concerns centered on the inclusion of count sixteen in the superseding indictment. Under the terms of the new memorandum of plea agreement, that count would not be dismissed until sentencing. Yurgin's concern was that reference to the assault charge would result in a higher-level security classification for him in the Bureau of Prisons ("BOP"). (See D.I. 55 at 23-24.) Yurgin emphasized, however, that he was willing to plead guilty under the terms of the original plea agreement that had been prepared before the superseding indictment containing Count Sixteen was issued. (E.g., id. at 20-21.) Instead of paraphrasing or summarizing the record further, the court simply will quote the relevant portions of the hearing's transcript during which Yurgin – directly, and not through counsel – explained to the court the source of his reservations about pleading guilty to the memorandum of plea agreement that the government was offering at the time:

> THE DEFENDANT: . . . My attorney and I, when we had came back in to discuss about pleading out, the original plea agreement that I signed, that I had backed out on, that I said I would plead guilty to this time, Mr. Kravetz [the Assistant United States Attorney primarily responsible for this action] was of the understanding along with my lawyer, Mr. Stapleton [Mr. Yurgin's former counsel], about the whole concern. So I signed the plea to information where the entire assault charge was just removed out.[2]

---

[2] The court notes that the original 9-count charging document that was the subject of the

2

THE COURT: Now we have the superseding indictment where it has been removed. Right? Is that correct? Procedurally, where are we?
THE DEFENDANT: The assault charge is showing up as Count 16.

\*\*\*\*\*\*\*\*\*\*\*\*

THE COURT: That count is coming out.
MR. SNYDER [Assistant United States Attorney]: It is being dismissed at the time of sentencing.
THE DEFENDANT: At the time of sentencing. That was my concern.
THE COURT: You are not going to be classified until sometime after sentencing.
THE DEFENDANT: With all due respect, Your Honor, unfortunately, being incarcerated in the BOP before, that's why Mr. Kravetz and Mr. Stapleton agreed to the plea of information where the assault charge was just removed from what I was pleading to. That was the copy that I had signed.
THE COURT: I am understanding better now what has been said.
THE DEFENDANT: That's what I had signed. When Mr. Stapleton came to see me again in negotiation with the plea, I said, I will adopt it, I will go ahead with it, after thinking about it, and as long as it's the one that I had signed. Well, today, Mr. Stapleton and I were reviewing the plea agreement, it's making reference to Count 16. The assault charge has appeared back into the indictment. . . . In the original agreement that I had signed, which I said that I would agree to and accept the projected nine years, the assault charge was removed because of the agreement, Mr. Kravetz just removed it from the agreement, along with Mr. Stapleton.
THE COURT: So in the information --
THE DEFENDANT: In the plea to information.
THE COURT: -- there was no mention of Count 16.
THE DEFENDANT: Yes. And actually, it was Count 9 at that time. At that time, it was Count 9 and they removed it totally. That's my concern, because **other than making reference to it, I am willing to plead today**, as long as it is the original agreement that I had signed and I understand that Mr. Stapleton made reference to in the motion that we just dismissed through the courts.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

THE COURT: What is the difference you see and why?
THE DEFENDANT: Because, in my experience in going through the BOP before, it will affect my placement as to where I am placed to such programs as halfway house programs and so forth. It dramatically changes your level, your imprisonment level.
THE COURT: You think that the count as it was –
THE DEFENDANT: It's left in there, if it's left in there, Your Honor, until sentencing, as of the time of sentencing, it's dismissed, what's going to happen is the case manager, BOP, the Bureau of Prisons -- this is what Mr. Kravetz and Mr.

---

proposed plea agreement was an indictment rather than an information. (See D.I. 22.)

> Stapleton and I were trying to avoid -- the BOP will look at it and will say, well, you were charged with so many counts and he will read all the counts and he will go down to Count 16 and say, assault. And then automatically he is going to put a public safety factor.
> THE COURT: Even if it is dismissed.
> THE DEFENDANT: Even if it is dismissed, because it is considered relevant conduct because I signed a plea bargain, I would plead out to this if you want to charge me with this. Since I was not found guilty on it, or, you know, or found innocent on it, they still take that into consideration in the Sentencing Guideline -- in the sentencing calculation of what programs, like the public safety factor, the management variability, and so forth, to go to a minimum security, if I am eligible.
> THE COURT: It's your belief that it would not impact you that way that you have just described if it was the information --
> THE DEFENDANT: Well, as Mr. Stapleton and Mr. Kravetz and I had agreed on on the first plea agreement, the reason why it was removed was with that understanding.

(D.I. 55 at 18-24 (emphasis added).) Yurgin then reaffirmed his willingness to plead guilty to the prior version of the plea agreement, as long as no reference was made to any assault charge:

> THE COURT: . . . I am comfortable if the parties are comfortable with proceeding on the information or figuring out a different way, if the parties are comfortable figuring out a different way to address that concern you just shared with the Court.
> THE DEFENDANT: I have no problem pleading out to the plea of information that I have a copy of, where it was just totally removed. I will go through with that, no problem.

(Id. at 24.) At that point, the court called for a recess so that the parties could finalize the terms of a plea agreement that addressed Yurgin's concerns.

During the recess, the government and Yurgin agreed to a new memorandum of plea agreement under which Yurgin would plead guilty to a newly-drafted six-count Felony Information, which did not include the assault charge. (See D.I. 50.) The new memorandum of plea agreement likewise made no reference to the assault charge, but instead stated that the government would "dismiss the Superseding Indictment . . . at the time of sentencing." (D.I. 52

4

at ¶ 2.) Both the Information and the new Memorandum of Plea Agreement were electronically filed on the afternoon of August 30. After the recess, the court proceeded with the Rule 11 colloquy, during which the court asked Yurgin if he understood his rights and the nature of the charges against him. Toward the end of the colloquy, the government made a lengthy statement in which it recited the factual basis for Yurgin's plea. In the statement, the government discussed the fraudulent scheme that Yurgin and his co-defendant created and executed. (See id. at 55-59.) At the conclusion of the government's factual statement, the court addressed Yurgin:

> THE COURT: Mr. Yurgin, did you listen to the statement just read into the record by Mr. Snyder?
> THE DEFENDANT: Yes.
> THE COURT: Do you agree with it?
> THE DEFENDANT: Yes, I do.
> THE COURT: These are the facts to which you are admitting?
> THE DEFENDANT: Yes.
> THE COURT: Including the incorporation of other facts from the information by reference? Is that correct?
> THE DEFENDANT: Yes.
> THE COURT: Then my question to you, sir, is how do you plead to the counts outlined previously by me in the information?
> THE DEFENDANT: Guilty.

(Id. at 59-60.)

The court scheduled sentencing for November 22, 2010. On October 6, 2010, the court received a letter from Mr. Yurgin dated September 24, 2010. (D.I. 54.) Yurgin's letter stated that when Mr. Yurgin met with Margaret Bray, the U.S. Probation Officer assigned to his case, she said that "a mention of the assault charge might be included in the PSR." (Id.) In response, Yurgin said that he "immediately reminded Ms. Bray that I didn't plea out to the assault charge and to my understanding after court on 8/30/10 there would be no mention of it." (Id.) In reality, however, the court had informed both Yurgin and his former counsel during the August

5

30 hearing that the plea agreement between the government and Yurgin could not bind the court nor control what information could be included in his PSR. (See D.I. 55 at 8-13 (discussion at sidebar) & 16-18 (colloquy with Yurgin).) The letter went on:

> I would like to end my relationship with Mr. Stapleton as my counsel, citing ineffective assistance of counsel.
> At the same time I would like to try and keep the plea deal as long as it is what was agreed to in court on 8/30/10 with no reference to the alledged (sic) assault. (I am afraid that if the deal is completely cancelled that the Assistant District (sic) Attorney will comeback again to supercede me with more of the identity theft charges which carries minimum mandatories of 2 years for each count) However, ultimately if what I [pled] out to is not honored than (sic) I cannot go through with the plea, and return my plea to not guilty.

(D.I. 54.) The letter went onto to explain the various sources of Yurgin's frustration with his then-current counsel, Larrick Stapleton, and his desire for new counsel to be appointed. (Id.) The letter also stated that while "I have done everything I can to accommodate my acceptance of responsibility . . . I have been very clear under any circumstances I will not accept the false accusation or reference to assault." (Id.) He stated that he would "request to proceed to trial if the issue cannot be resolved in the plea agreement." (Id.) The court granted Yurgin's request for new counsel, and appointed Mark Greenberg to represent him. (See Minute Entries for October 7, 2010.)

On the morning of the scheduled sentencing hearing, Yurgin filed through his new counsel the instant motion to withdraw his guilty plea. The motion itself cited the "total absence of trust, communication and understanding between the defendant and former counsel" as the grounds for withdrawing the guilty plea. (D.I. 67 at 4.) The motion also stated that Yurgin "is innocent of the charges" and attached two letters (styled as unsworn "Affidavits") from Yurgin.

In the first letter, Yurgin stated that he was "innocent of all 16 counts on the indictment."[3] (D.I. 67, Ex. C.) In the second, Yurgin provided a more detailed account of the breakdown in his relationship with Mr. Stapleton. (D.I. 67, Ex. D.) At the scheduled sentencing hearing, the court reserved ruling on the motion and ordered the parties to prepare a briefing schedule. Briefing was completed on December 23, 2010. For the reasons stated below, the court will deny the motion.

## III. DISCUSSION

After the court has accepted a defendant's plea of guilty, he cannot withdraw it on a "whim." *United States v. Brown*, 250 F.3d 811, 815 (3d Cir. 2001). Rather, he must show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d). The Third Circuit has indicated that the defendant's burden in this context is "substantial." *United States v. Jones*, 336 F.3d 245, 252 (3d Cir. 2003). There are three factors that the court must consider in determining whether the defendant has met the "fair and just reason" standard to withdraw a guilty plea, including: (1) a defendant's assertion of innocence; (2) the strength of a defendant's reasons for withdrawal; and (3) the prejudice to the government that could potentially result from a withdrawal. *Brown*, 250 F.3d at 815. Under this standard, the court considers the prejudice to the government only if the defendant satisfies the initial burden of establishing adequate grounds for withdrawal under the first two factors. *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995) (citing *United States v. Martinez*, 785 F.2d 111 (3d Cir. 1986)).

---

[3] The court notes that at this point in the case, the active charging document that was referenced in the relevant plea agreement was not the 16-count indictment issued on August 12, 2010, but rather the six-count felony information (containing no reference to the assault charge) that had been prepared consistent with Yurgin's in-court requests on August 30, 2010. (See D.I.

Here, after having considered Yurgin's motion to withdraw, the parties' briefs, and the applicable legal standard, the court concludes that Yurgin should not be permitted to withdraw his guilty plea because he has neither meaningfully asserted his innocence nor provided a sufficiently strong reason for withdrawing his plea.

A.  **Assertion of Innocence**

Although Yurgin has now asserted his innocence in an unsworn letter attached as an exhibit to his motion, he does not support his assertion of innocence with any facts that have been placed in the record, as required by *Brown* and *Jones*. *E.g.*, *Brown*, 250 F.3d at 818 ("Bald assertions of innocence . . . are insufficient to permit a defendant to withdraw [a] guilty plea . . . . Assertions of innocence must be buttressed by facts in the record that support a claimed defense."). Even in the lengthier unsworn letter in which Yurgin describes the breakdown of his relationship with his former counsel, Yurgin's concerns focus almost exclusively on the mention of the assault charge in prior versions of his charging documents and plea agreements, and not on his guilt or innocence of the charges in the Felony Information to which he pled guilty. (D.I. 67, Ex. D.) In fact, nowhere in that letter does Yurgin assert his innocence on the six counts included in the information to which he pled guilty, much less cite facts in the record supporting an assertion of innocence on those counts. (Id.) In any case, blanket assertions of innocence in unsworn letters are not sufficient to justify withdrawal of a guilty plea. *See United States v. Darby*, No. 07-4608, 2009 U.S. App. LEXIS 8065, at *3 (3d Cir. April 13, 2009).[4]

---

50, D.I. 52.)

[4] In his memorandum in support of his motion, Yurgin asserts that a "[d]efendant is not required to walk into a perjury trap . . . before he is allowed to withdraw his guilty plea." (D.I. 69.) Of course, the requirement that a defendant place facts into the record supporting his

The only other basis upon which Yurgin argues that he has adequately asserted his innocence is a letter purportedly written by his co-defendant, Aughenbaugh.[5] (See D.I. 73, Exhibit.) The letter, however, does not constitute evidence in the record supporting an assertion of innocence. First, like Mr. Yurgin's bald assertion of innocence, the letter simply states that Mr. Yurgin is "inocent (sic) of any wrongdoing" and that the writer "alone did the crime in which I have been sentenced" without citing to or providing any facts in the record in support of that bald assertion. (Id.) Even more fundamentally, the letter is not part of the record in this case, but rather was simply filed as an exhibit to Yurgin's brief in support of his motion. Mr. Aughenbaugh was not under oath at the time the letter was written; indeed, the court has no way of verifying that it actually was Mr. Aughenbaugh who wrote the letter. The court will not permit Yurgin to withdraw his guilty plea based on unsworn and unsupported assertions of innocence provided by Yurgin and (purportedly) his co-conspirator.

The standard requires defendants seeking to withdraw a guilty plea to support his assertion of innocence with *facts* that are *in the record*, not with conclusory statements made in documents that are not part of the record. With respect to his motion, Yurgin provides only the latter. Yurgin has cited no facts in the record in support of his blanket assertions of innocence, nor has he moved the court to convene a hearing at which he would have an opportunity to enter such evidence into the record. Instead, Yurgin asks the court to grant his motion to withdraw his

---

assertion of innocence does not require the defendant to commit perjury. The issue for the purposes of determining whether Yurgin can withdraw his guilty plea is merely whether he can point to any factual statements in the record supporting his claim of innocence. At this point, it appears he cannot.

[5] In the longer letter attached to his motion, Yurgin states: "My defense for trial has always been based on Mr. Aughenbaugh's testimony." (D.I. 67, Ex. D at 8.)

guilty plea and *then* "call Mr. Aughenbaugh as a witness . . . and have him testify" as to Yurgin's innocence. The law does not permit such machinations. If a defendant wishes to recant his on-the-record admission of guilt and withdraw his guilty plea, he must put facts in the record supporting his assertion of innocence before the motion is decided. He cannot simply make off-the-record statements and hint that on-the-record support will come later. For these reasons, Yurgin has failed to meaningfully assert his innocence in this case. On this basis alone, the court concludes that Yurgin has failed to provide a fair and just reason for withdrawing his guilty plea.

## II.     Strength of Reasons for Withdrawal

As to the second of the three *Brown* factors, the court does not view Yurgin's asserted reasons for withdrawing his guilty plea to be particularly strong in the circumstances of this case. The court recognizes the breakdown that occurred in the attorney-client relationship between Yurgin and his former counsel, and has reviewed Yurgin's allegations of Stapleton's "lies, manipulation, and deceit" in the letters he submitted to the court. Even if the court were to accept *arguendo* the allegations in Yurgin's unsworn letters, however, the court is far from persuaded that Yurgin's guilty plea was the result of deceit or coercion.

The court's experience with Yurgin throughout these proceedings demonstrates that Yurgin has not hesitated to bring his concerns to the court directly, rather than through counsel. As the excerpts from the transcript demonstrate (see *supra* ¶ 2), the dialogue during the morning of the August 30 hearing was driven largely by the concerns that Yurgin himself stated directly to the court. At his prior change of plea hearing as well, the court scheduled his trial date before the end of September because Yurgin himself indicated that he would not waive his speedy trial rights. With respect to the breakdown in his relationship with Mr. Stapleton, the court provided

Yurgin with the remedy he himself requested when it removed Stapleton as counsel and provided him with replacement counsel for sentencing – one whose competence Yurgin has never questioned.

As Yurgin's own on-the-record statements (see D.I. 55 at 18-24) and subsequent off-the-record letters (see D.I. 54; D.I. 67, Ex. D) demonstrate, Yurgin's concerns with his plea agreement have always stemmed from his insistence that the assault charge not be mentioned in documents connected to his guilty plea. The information that was drafted on August 30 and the associated plea agreement that Yurgin signed reflects his desire that the assault charge not be mentioned. Yurgin's September 24 letter stated that he wished to withdraw his guilty plea if references to the alleged assault were not removed from the PSR as well. As the court directly explained to Yurgin himself at the time of his plea, however, plea agreements between the defendant and the government cannot bind judicial entities such as the probation office or control what may appear in the PSR. (See D.I. 55 at 16-17.) Later that afternoon, the court reiterated that the court is not bound by the plea agreement during the Rule 11 colloquy, and Yurgin stated that he understood. (See id. at 37-38.) Yurgin then reaffirmed that no one had made promises to him outside of those contained the memorandum of plea agreement, and that no one was forcing him to plead guilty. (See id. at 38.) Yurgin then pled guilty and signed the Information. (Id. at 60.)

For these reasons, the court is satisfied that despite the breakdown in his relationship with Mr. Stapleton, Yurgin's guilty plea was a well-informed one that was driven by his own concerns and wishes. It therefore does not view his allegations regarding the breakdown of his relationship with Stapleton as providing a compelling reason to withdraw his guilty plea.

Moreover and as described above, even if the court were to view these allegations as providing a strong justification, Yurgin has failed to cite any facts in the record – or moved the court to convene a hearing at which facts could be put on the record – supporting an assertion of innocence. Since each of the first two *Brown* factors weighs decidedly against allowing Yurgin to withdraw his plea, the court need not consider the prejudice to the government that would ensue if Yurgin were permitted to withdraw the plea and proceed to trial. Given the foregoing, Yurgin's arguments do not meet the "fair and just" standard for permitting a defendant to withdraw his guilty plea.[6] His motion will therefore be denied.

Dated: February 3, 2011

CHIEF, UNITED STATES DISTRICT JUDGE

---

[6] The court need not determine whether the government would be prejudiced by any withdrawal, as Yurgin has not shown that there is any reason to allow him to withdraw the plea. *See Jones*, 336 F.3d at 255 (citing *United States v. Harris*, 44 F.3d 1206, 1210 (3d Cir. 1995)).

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| UNITED STATES OF AMERICA, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Criminal Action No. 10-21-GMS |
|  | ) |  |
| TODD YURGIN | ) |  |
|  | ) |  |
| Defendant. | ) |  |

**ORDER**

For the reasons stated in the court's memorandum of this same date, IT IS HEREBY ORDERED that:

1. Yurgin's motion to withdraw his guilty plea (D.I. 67) is DENIED.

2. Yurgin shall appear for sentencing in this matter on **Thursday, March 24, 2011, at 9:30 a.m.**

Dated: February 3, 2011

CHIEF, UNITED STATES DISTRICT JUDGE